SCHAIDLER, Administratrix, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*March 15 — April 4, 1899.*

*Railroads: Negligence causing death: Hypothetical questions: Incurable disease: Damages: Remarks of counsel: General and special verdict: Instructions to jury.*

1. In an action against a railway company for the death of plaintiff's intestate, which occurred from *diabetes mellitus* thirteen days after a collision at a highway crossing, there was evidence that plaintiff suffered from said disease two years before his death; that it was a chronic disease and usually terminated fatally in from four months to six years, depending on age; but that plaintiff for a year and a half prior to the accident was apparently in a normal state of health. *Held*, that an hypothetical question designed to elicit from witnesses their opinions as to the cause of death, which recited the evidence with reference to the accident but omitted all reference to said disease, was misleading.

2. A railway company cannot escape liability for negligence causing death by showing that the person killed was so diseased that his life would necessarily have terminated in a short time in the absence of the accident, but such evidence should be taken into account in assessing the damages.

3. In such a case statements of plaintiff's counsel in his argument to the jury that "We can show you how many hundred men have come near being killed there, if you want us to;" that "You are called upon to set a price upon a human life;" that "Barriers are erected and watchmen placed at crossings on account of their danger, and in this case, unless the company can show they blew the whistle and rang the bell," it was liable; that "I know of a case in this town of a doctor who treated a little boy, who said the boy must die; but no sooner had he pronounced his death sentence than he got better, in defiance of the doctor's prognostication," are *held* erroneous, where not properly excluded from the consideration of the jury by the trial court.

4. The submission of a general verdict in connection with a special verdict, and the giving of a lengthy charge to the jury thereon, some portions of which were applicable to the special questions, is erroneous.

5. The giving of instructions to the jury applicable to questions submitted for special verdict, in detached fragments, distant from each other, disapproved.

APPEAL from a judgment of the circuit court for Monroe county: O..B. WYMAN, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Fish, Cary, Upham & Black,* and oral argument by *John T. Fish.*

For the respondent there was a brief by *D. F. Jones,* and oral argument by *Mr. Jones* and *Mr. F. H. Bloomingdale.*

CASSODAY, C. J.   This action was brought to recover damages for the death of John F. Schaidler, husband of the plaintiff, resulting from injuries received by him, October 4, 1895, at a crossing of the defendant's railroad track with a certain highway leading from the village of Norwalk to Ridgeville, in Monroe county.   Issue being joined and trial had, the jury at the close of the trial returned a special and also a general verdict to the effect (1) that the deceased was injured in his person at the highway crossing in question October 4, 1895; (2) that the whistle of the head locomotive was not blown at the whistling post eighty rods north of the crossing; (3) that the bell of the head locomotive was not rung eighty rods north of the highway crossing and from thence until the locomotive passed the crossing; (4) that such failure to ring the bell or blow the whistle was the proximate cause of the injury; (5) that the deceased was not guilty of any want of ordinary care on his part which proximately caused or contributed to such injury; (7) that such injury was an adequate and efficient cause of the death of the deceased; (8) that the deceased, prior to October 4, 1895, did have *diabetes mellitus,* (9) but had recovered from such disease October 4, 1895; (10) that the deceased died of *diabetes mellitus;* (11) that such disease was precipitated by the injury received by him at the time and place in question; (12) that he would have lived longer than he did if he had

not met with the accident in question; (13) that a man of
ordinary intelligence and prudence, considering the business
carried on by the defendant, ought to have reasonably ex-
pected, under all the attending circumstances, that the fail-
ure to blow the whistle or the failure to ring the bell would
likely result in an injury to a traveler on the public highway
at the crossing in question; (14) that the plaintiff, as such
widow, has sustained pecuniary loss by reason of such death
to the amount of $2,000; (15) that they found for the plaint-
iff.   From the judgment entered upon such verdicts the de-
fendant appeals.

.  On the day in question the deceased started from his home
at Ridgeville, some distance northeasterly of the crossing in
question, with a team and lumber wagon loaded with hogs
in a rack.   He passed over the crossing in question, and
went in a southwesterly direction to Norwalk, which was
about four miles from Ridgeville.   After disposing of his
hogs he started home by the same route.   As he approached
the crossing the highway ran along on the west side of the
defendant's right of way, but at a very much lower grade.
At a distance of 373 feet south of the crossing the highway
was about seventeen feet lower than the crossing.   From
that point until it got within seventy-three feet of the cross-
ing it gradually rose, until it was only eleven and eight-
tenths feet below the crossing, and continued to rise until
it got within twenty-two feet from the railway track, when
the ascent became very abrupt.   At eighteen feet from
the crossing the railway track was seven and one-half feet
higher than the surface of the highway.   As the highway
came near the crossing it gradually turned toward the east. •
Upon the northerly side of the highway, so approaching the
crossing from the direction of Norwalk, there was a high
embankment upon the westerly side of the defendant's right
of way, with railroad ties piled on the top of it adjacent to
the railroad track, obstructing the view, so that a person

approaching the crossing from that direction was unable to
see a train coming from the north until within a few feet
from the track.    Such embankment came to within eighteen
or twenty feet of the track.    A person could not see a train
approaching from the north' at any considerable distance
until he got so near the track that the embankment with the
ties piled thereon would not obstruct his vision.

There is testimony tending to prove that when the deceased
came to that little hill, going up to the crossing, he stopped
a second, looked toward the crossing, and drove on again;
that his team walked up, going to the crossing; that then,
at the same time that the horses stepped on the crossing, the
train came along; that the off horse tried to jump over, and
got hit by the engine; that the deceased tried to jerk them
back; that the collision threw the horses back, and broke
up the wagon tongue and reach, and threw everything head
over heels, and the whole lot fell on the top of the deceased;
that the whistle was not blown before the train reached the
crossing, nor the bell rung; that the train was running pretty
fast; that it was downgrade; that the train was not using
any steam.

Upon the record before us we do not feel authorized to
say, as a matter of law, that the finding of the jury upon
either the first, second, third, fourth, or fifth question sub-
mitted is unsupported by evidence.

1. Error is assigned because the physicians, as medical ex-
perts on the part of the plaintiff, were allowed to answer this
hypothetical question: "Assuming that on the 4th day of·
October, 1895, the deceased was a young man, about twenty-
six years of age; that he was a farmer by occupation, and
for a year or more prior thereto had been in charge of a
farm, working the same, and performing severe manual
labor, such as farmers usually perform, during that time;
that for a year and a half prior thereto he was apparently
in a normal state of health; that on the day aforesaid he

loaded a load of hogs, and went with his team to Norwalk, a distance of three and a half miles or more, and transacted his business; that while returning home, sitting in a lumber wagon, he attempted to drive his team and wagon across the defendant's railroad crossing at a point mentioned in the complaint; that the defendant's locomotive and train rushed down upon him while his team was upon the crossing aforesaid, killing one horse and throwing the deceased to the ground with great violence, and hurling the wagon and rack upon him; that a few hours later he spat blood, and some time following this felt sick, suffered loss of strength, appetite, and sleep; that he was not thereafter able to per- form his usual work, or perform labor of any kind as theretofore, and grew steadily weaker from day to day; that on or about the 16th day of October, 1895, he became bedridden, and about 2 o'clock of the same day lapsed into unconsciousness, accompanied by heavy breathing, and about twelve hours thereafter (1:30 o'clock, Thursday morning, on the 17th day of October, 1895,— thirteen days after the injury) he died, what, in your opinion, was the cause of death?"

The experts found difficulty in answering the question. One of them said: " The immediate cause of death would have to be found upon more exact knowledge as to his condition at the time;" that the exact cause of death he could not give, but, confining himself to the facts recited in the question, he would attribute his death to the accident. Another answered the same way, upon the assumption that the question embraced all the facts to be obtained. Another answered the same way, and also said that in his opinion the man died of disease produced or intensified by the accident; that the accident might not have caused the immediate disease of death; that he did not know what the disease was, and from the statement of facts given to him he could not with any certainty tell what that disease was.

No physician was called to attend the deceased until the

day· before he died, and that physician was not sworn on behalf of the plaintiff. He was subsequently sworn, however, and testified (what is now conceded) that he was called to administer to the deceased October 15, 1893; that he then found him suffering from *diabetes mellitus* or what is called sugar diabetes, which he had then been suffering from for several months; that he continued to treat him at that time until November 20, 1893; that the nature of *diabetes mellitus* was to run a chronic course, and usually terminate in death; that the younger the patient the shorter it usually runs, and that it would run anywhere from four months to· six years; that, assuming the deceased to have been twenty-four years of age when he attended him in 1893, his probable length of life would be about two years; that he considered diabetes, once established in a man twenty-four years of age, to be continuous; that when he was called to see him, the day before his death, he found him in a state of coma,— stupor,— and that he had *diabetes mellitus*. There is evidence tending to show, however, that for a year and a half prior to the accident the deceased was apparently in a normal state of health.

The principal difficulty with the question is that it entirely ignores the disease of *diabetes mellitus*, which he thus· confessedly had two years before the accident, and of which the jury found that he died. Such conditions made the case one peculiarly calling for expert testimony. Expert testimony, in such cases, is necessarily limited to questions of science and skill. 1 Greenl. Ev. § 440·; *Knoll v. State*, 55 Wis. 249. The opinion of such expert is his ultimate conclusion from facts which are admitted, proved, or assumed. To be of value, the opinion should be based upon all known and pertinent conditions. Even then the opinions of· such experts frequently differ as to such ultimate conclusions. The question in the case at bar is incumbered with some unnecessary details, but by omitting all reference to the dis-

ease of *diabetes mellitus* it was, substantially, what was suggested by some of the plaintiff's experts, that is to say: Whereas the deceased was apparently well, and suffered the accident, and gradually grew weaker, and at the end of thirteen days died, what was the cause of his death? Of course, by excluding all reference to any disease, the accident is the only cause suggested in the question; and that could as well be answered by a layman as by a medical expert. The case is unlike *Tebo v. Augusta*, 90 Wis. 406, where actual conditions were assumed. So it is unlike *Selleck v. Janesville*, 100 Wis. 163, where the question embraced actual conditions and facts ascertained by the medical expert from personal examination. We are constrained to hold that the question was misleading.

2. Of course, highways are made to be traveled by all classes of people, including those who are sick and diseased as well as those who are strong and healthy. *McNamara v. Clintonville*, 62 Wis. 207, and cases there cited. A railway company can no more escape liability for negligently causing the death of one class than the other. The damage to the surviving relatives, however, would manifestly be very much less in the case of a person who, at the time of the injury, was so diseased that his life would necessarily terminate in a short time in the absence of such injury. In the case at bar, the motion to set aside the verdict was based in part upon the ground that the damages were excessive. Upon some phases of the evidence, this exception would seem to be well founded. The jury were probably stimulated to find the amount of damages mentioned by reason of objectionable remarks of counsel for the plaintiff, as follows: "We can show you how many hundred men have come near being killed there, if you want us to." "You are called upon to set a price upon a human life." "Barriers are erected and watchmen placed at crossings on account of their danger, and in this case, unless the company can show they blew the

Masterson vs. Chicago & Northwestern R. Co.

whistle and rang the bell, the railroad company is liable." "I know of a case in this town of a doctor who treated a little boy, who said the boy must die; but no sooner had he pronounced his death sentence than he got better, in defiance of the doctor's prognostication." Some of such remarks were held to be improper by the trial court, but not in a way to exclude them from the consideration of the jury. *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 361; 362.

3. The submitting of a general verdict in connection with fourteen specific questions, with a lengthy charge to the jury thereon, and some portions of which are applicable to some of such specific questions, not only tended to mislead the jury, but is contrary to the recent ruling of this court. *Ward v. C., M. & St. P. R. Co., ante,* p. 215. The rules there stated should be followed.

The charge in the case at bar is open to the criticism that the charge upon each of several of the specific questions submitted is given in detached fragments,— distant from each other,— in violation of the recent ruling of this court in *McDermott v. Jackson, ante,* p. 419.

There may be other errors, but what has been said will, it is believed, be a sufficient guide upon the new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.