## NELSON v. ARMOUR PACKING COMPANY.

### Opinion delivered July 22, 1905.

1. SALE OF PROVISIONS—WARRANTY.—In the sale of provisions by one dealer to another, in the course of general commercial transactions, the maxim *caveat emptor* applies, and there is no implied warranty or representation of quality or fitness; but when articles of human food are sold to the consumer for immediate use, there is an implied warranty or representation that they are sound and fit for food. (Page 355.)

2.  SAME—PRIVITY OF CONTRACT.—As a warranty in a sale of personal
    property does not run with the property, and as there is no privity
    of contract between a vendor in one sale and the vendees of the same
    property in subsequent sales, each vendee, as a general rule, can
    resort only to his immediate vendor.  (Page 355.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

Lucien M. and E. B. Nelson filed separate suits against the
Armour Packing Company.  The facts appear in the opinion.

*L. A. Byrne* and *B. A. Lewis,* for appellants.

Manufacturers of food stuffs are held to great caution to
see that the articles of food contain nothing deleterious to life or
health.  74 Ark. 144; 139 Mass. 411; 12 Johns. 468; 18
Mich. 50; 6 N. Y. 396; 41 S. E. 190; 47 Atl. 965; 48 S. W. 971.

*Scott & Head,* for appellee.

In the sale of drugs, medicines and chemicals, the rule *caveat
emptor* does not apply if the purchaser is not an expert, and buys
in reliance upon the knowledge and skill of the druggist.
15 Am. & Eng. Enc. Law, 1239; 15 L. R. A. 818; 23 R. I. 381;
Benj. Sales, § 431, 668; 106 Mass. 143.  There is no general or
public duty, but only a duty which arises from the contract, out
of which no duty arises to strangers to the contract.  96 Mich.
245; 110 Mo. 605; 119 Fed. 572; 73 N. W. 163; 142 Pa. St. 221;
163 Ill. 518; 145 Mass. 439.

BATTLE, J.  In these two cases complaints were filed, contain-
ing the same allegations.  The allegations in the first are as
follows:

"Comes the plaintiff, L. M. Nelson, and complains of the
defendant, Armour Packing Company, and for his cause of action
says:

"That the defendant, Armour Packing Company, is a corpo-
ration organized and existing under the laws of the State of New
Jersey; that said defendant, Armour Packing Company, main-
tains a branch of its business in Kansas City, Kansas, and the
plaintiff's cause of action occurred in Miller County, Arkansas.

"That said branch house or business of the Armour Packing
Company in Kansas City is engaged in the preparation and pack-

23

ing of the various articles of food which it places on the market for sale to whomsoever may wish to purchase; that, among said various articles of food, the defendant, Armour Packing Company, prepares, packs in sealed tin cans, and places on the market for sale to the wholesale and retail trade an article of food commonly known, and so labeled and branded, as 'Lunch Tongue.' That when said lunch tongue is so prepared and placed in sealed tin cans, it is intended and fixed for immediate use as food on the family tables without further preparation, and the public is invited to purchase same as such in this condition; and the label aforesaid was printed and pasted on the can from which plaintiff was poisoned, as hereinafter alleged, in plain letters the following: 'Select cooked tongue. This can is soldered on the outside and without the use of acids, therefore allowing no criticism as to the formation of the cans. These tongues are selected, preserved and packed with due reference to their keeping in all climates; guaranteed.' Whereby said defendant is held in law and fact to warrant and guaranty same to be wholesome food and free from impurities to all consumers.

"That on or about the 21st day of December, 1901, the defendant, through its Kansas City packery, sold to A. J. Offenhauser, of Texarkana, Arkansas, a dealer in family groceries, a case of lunch tongue, and immediately thereafter a can of said lunch tongue was bought of said A. J. Offenhauser by the plaintiff's family, and was on the same day opened and served for supper on the family table at the home of this plaintiff.

"That the plaintiff ate of this food so prepared by the defendant, and the same was partaken of by him, trusting and believing that the same was wholesome and good, and safe to be eaten, and had been properly prepared by the defendant; but the plaintiff says said food was not good and wholesome and properly prepared, but improperly and negligently prepared in a way not known to the plaintiff, but the same was infected with ptomaine and other poison, and was thereby rendered unwholesome, poisonous, dangerous and unfit to be eaten, and by reason thereof plaintiff was poisoned and greatly injured, and made very sick, and endured thereby great pain and suffering, and was obliged to have, and did have, a physician to attend him during his sickness, and was subjected by reason thereof to great expense for medical

attendance and medicine.   Plaintiff was very sick, nigh unto death, during the entire night, and continued to be sick for many days, which said sickness and disability were caused by the eating of said poisonous and dangerous food, negligently prepared and put on the market for sale by the defendant, Armour Packing Company.

"That injuries complained of were caused by the negligence of the defendant, its agent or servants, and this plaintiff in no manner whatever contributed to the acts resulting in said injury.

"That for bodily injury and pain and suffering incident thereto, the plaintiff has suffered damages in the sum of one thousand eight hundred dollars.

"Wherefore, premises considered, plaintiff prays judgment for his damages, for cost and general relief."

The defendant filed a demurrer to the complaint, which the court sustained.   The plaintiff rested upon his complaint, and the court rendered judgment in favor of the defendant, and plaintiff appealed.

The demurrer was properly sustained.

In the sale of provisions by one dealer to another in the course of general commercial transactions, the maxim *caveat emptor* applies, and there is no implied warranty or representation of quality or fitness; but when articles of human food are sold to the consumer for immediate use, there is an implied warranty or representation that they are sound and fit for food. *Howard* v. *Emmerson,* 110 Mass. 320; *Giron* v. *Stedman,* 145 Mass. 439; Benjamin, Sales (7th Ed., Bennett's), pp. 661, 691; 2 Mechem, Sales, §§ 1356, 1357; Tiedeman, Sales, § 191.

Unlike covenants as to the title to land, a warranty upon the sale of personal property does not run with the property.   There is no privity of contract between the vendor in one sale and the vendees of the same property in subsequent sales.   Each vendee can resort, as a general rule, only to his immediate vendor. *Boyd* v. *Whitfield,* 19 Ark. 447; *Bordwell* v. *Collie,* 45 N. Y. 494.

In this case there was no privity of contract between appellant and appellee, and no warranty passed with the property from appellee to appellant through his vendor.

Judgment affirmed.