SLIMAN *v.* COLORADO MILLING & ELEVATOR COMPANY.

4-6643                                         158 S. W. 2d 919

Opinion delivered February 23, 1942.

[13] See *Sohland* v. *Baker,* 15 Del. App. 431, 141 Atl. 277, 58 A. L. R. 693.

A. F. Barham, for appellant.

Glen A. Wisdom and Reid & Evrard, for appellee.

SMITH, J. Appellee is a miller, engaged in milling flour at Wilson, Kansas. Appellant is a grocer, and sells flour in wholesale quantities. These parties entered into a contract on April 9, 1940, whereby appellee agreed to mill and sell to appellant a thousand barrels of flour. This suit arose out of and is based upon that contract. The case presents no question as to the extent and amount of appellant's liability, if liable at all, for the breach of the contract. After the introduction of the testimony, the court instructed the jury to return a verdict for the plaintiff—appellee—and from the judgment pronounced upon the verdict returned is this appeal.

Appellee is a foreign corporation, not authorized to do business in this state under the laws thereof, and it is insisted that the contract sued on was to be performed in·this state, and that authority is lacking for suit thereon in this state.

The testimony does not support this contention. It is undisputed that the contract was negotiated and consummated by correspondence through the United States

mails and by telegraph and telephone messages between appellant in this state and appellee's manager in the State of Kansas.

The contract contains this provision: "Terms of Payment: regular draft with bill of lading attached through ........................ Bank of ........................." The testimony shows that this provision of the contract, under the trade practice, contemplated that the shipper would draw a draft upon the purchaser, with the bill of lading attached, which would be sent for collection, for the account of the shipper, to a bank at the place of delivery. Upon payment of the draft, the bill of lading would be delivered to the consignee, and upon the surrender of the bill of lading to the delivering carrier, the shipment would be turned over to the consignee. But this does not constitute doing business in this state, and the case of *Hogan* v. *Intertype Corporation,* 136 Ark. 52, 206 S. W. 58, upon which appellant chiefly relies does not sustain that contention. The facts in the two cases are wholly dissimilar. There, a manufacturing company shipped to Huntington, in this state, to itself, a machine which Hogan had agreed to buy if it proved satisfactory after the test thereof had been made. The test was made in Huntington, and proved satisfactory, or apparently so, whereupon Hogan purchased it. Here, the shipment was direct to appellant. Moreover, in this case such flour as was shipped under the contract was shipped under an open bill of lading, and appellant was not required to pay the draft or to pay for the flour before its delivery to him. Indeed, the purpose of this suit is, in part, to recover the value of the flour shipped and delivered, but not paid for. In addition, appellee sued for the failure to order out the remainder of the flour as required by the contract.

The parties had dealt extensively with each other for a number of years, and with such mutual satisfaction that appellant insists that a relation of trust and confidence had arisen which entitled appellant to rely upon any representation made by appellee regarding market quotations for flour, and the chief ground for reversal appears to be that appellee knowingly made such false and fraudulent representations in regard to future market prices as

were calculated to and did induce him to buy a large quantity of flour on which a considerable loss will be sustained.

The basic price of the flour was $5.30 per barrel, in 98-pound sacks, with higher prices per barrel if packed in smaller sacks. Appellant had previously purchased from appellee an average of about two thousand dollars worth of flour per month at current prices. After the execution of the contract, and on May 20, 1940, appellee testified that while the thousand-barrel order was pending appellee accepted an order for 131 barrels of flour, at $4.70 per barrel, to fill out a car in completion of a previous contract.

The alleged false and fraudulent representations which induced the placing of the order for a thousand barrels of flour were to the following effect. There would be a war of long duration (and so there has been and is); that during the first World War flour had gone to $14 per barrel (and so it did); and that it would probably reach the same price before the close of the present war (which it has not yet done), and that flour bought at current prices would be cheaply bought, that Germany had invaded Holland and Belgium, which statement was qualified when appellant was reminded that the invasion did not occur until a month after the execution of the contract. The representation chiefly relied upon as being false and fraudulent was that appellee's manager reported that he had reliable and inside information that the President of the United States would take action to sustain and advance the price of wheat, which would, of course, determine the price of flour. It is a matter of common knowledge that the Federal Government has done, and is doing, much to sustain the price of wheat and other agricultural products.

We think the trial judge was warranted in finding, as he evidently did, that the statement of appellee's manager as to future prices was mere "sales talk," which did not constitute such false and fraudulent representations as would support a recovery of damages by one who had relied upon them, and had sustained damages from this reliance. Appellant did not claim to be a novice.

He was familiar with market quotations, and read them daily.

Appellant did not order out the flour as contemplated in the contract, and on June 17, 1940, appellee wrote appellant for shipping orders. In this letter, comment was made on the drastic and unexpected decline in the prices of wheat and flour which entailed loss on both parties. Appellant then made no contention that·he had been tricked or deceived, and ten days after receipt of the letter he wrote a letter which recognized the validity of the contract, and on July 9, 1940, appellant ordered out a car of flour under the contract. Appellant was apparently attempting to speculate on the fluctuations of the market at appellee's expense.

To maintain an action of this character it is essential that there be shown (1) a false statement of (2) a material fact (3) made with knowledge of its falsity, (4) with intent to deceive, which (5) is relied on by the opposite party, and (6) acted upon by him to (7) his damage, at least in cases such as this where no relation of trust and confidence exists, and the parties dealt with each other at arms' length.

We think no fraud was shown. The market did decline, and drastically so. But appellant knew this from his daily reading of the market quotations, but, if he had not done so, he was advised to that effect, for appellee's letter dated June 17, 1940, contained this statement: ''We realize that the flour is booked above the present basis, but that is something none of us can foresee and we have all had to take big losses due to the decline in wheat values. It is hard to understand how wheat could be worth one price one day and two or three days later be worth about 30 cents a bushel less when there is practically no change in consumption. However, that seemed to be the case last month, when we had a drastic decline, and it was something, of course, nobody looked for.''

Appellant had not, at the time of the receipt of this letter, ordered out any flour under the contract, and if he had been fraudulently induced to sign it he should have repudiated it when called upon to perform it, in which

event he would have sustained no loss; but, instead of repudiating the contract as having been fraudulently procured, he ordered out a car of flour to be shipped under the contract. This was a ratification, which cannot now be repudiated.

We conclude, therefore, that no error was committed in directing a verdict in appellee's favor, and the judgment is affirmed.