A. J. MYERS and Dorothy Myers, husband and wife, Plaintiffs,

v.

COUNCIL MANUFACTURING CORPORATION, Defendant.

Civ. A. No. 2037.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Nov. 20, 1967.

Kenneth Hawkins, Yakima, Wash., Bryan & Fitzhugh, Fort Smith, Ark., for plaintiffs.

Owen C. Pearce and David A. Stewart, Fort Smith, Ark., for defendant.

## OPINION

WILLIAMS, District Judge.

In reality this is an action by the plaintiff A. J. Myers to recover the sum of Two Hundred Sixty Three Thousand Five Hundred Thirty Eight Dollars and Ninety Cents ($263,538.90) which is the amount of damages alleged to have been sustained by him as the result of alleged breach of express and implied warranties, or resulting from false representations in connection with the purchase by him of certain ice making and ice vending machines, or resulting from the breach of a contract to repair such equipment. The defendant specifically denies the material allegations.

The plaintiff is a citizen and resident of Yakima, Washington and the defendant is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Fort Smith, Arkansas. The Court has jurisdiction by reason of diversity of citizenship and the amount involved.

Dr. Myers is an Osteopath of some twenty plus years experience and very active and successful in his practice. He is well trained in his field, highly intelligent and in addition to his practice of Osteopathy has engaged in private business; owned two corporations which he used in engaging in business outside his profession as an Osteopath and the transactions involved in this lawsuit were conducted by Dr. Myers in the name of "Parkview Incorporated." There is no question but that, for the purpose of this action, the plaintiffs and Parkview Incorporated are one and the same.

The defendant is a closely held, family owned corporation and Dansby Council is its president and chief executive officer. It is engaged in the business of manufacturing and selling ice making and ice vending machines under the trade name of "Handy Dan." Its advertising program includes colored brochures and printed material purporting to describe attractively the merchandise or products offered for sale and to attractively call the attention of the prospective customers to the potential profit that can possibly be made by the customer if he should buy the product and operate it. Council Manufacturing Corporation operated all over the United States and even abroad, a sizeable portion of its products being in use by the United States in Vietnam at this time.

In 1961 Dr. Myers became interested in the ice making and vending business and began making an investigation of its possibilities in the Yakima-Moses Lake Areas of the State of Washington. Due to an automobile wreck in which he was seriously injured Dr. Myers lost the first three months of 1962, but just as soon as he was able to get around he turned a great deal of his attention to the feasibility of such a venture. He had already talked with Wells Labberton, a salesman for Modern Refrigeration Company of Seattle, Washington, which had a franchise agreement with the defendant for the distribution and sale of "Handy Dan" equipment. He read the brochures and printed matter concerning the equipment. He became convinced that an ice vending venture should begin immediately and went to Seattle to talk personally with Richard Lord, the president of Modern Refrigeration. Mr. Lord presented his sales approach and made it as persuasive as he could and furnished a

study and report concerning the ice vending business referred to as the "Wharton Report." (Plaintiff's Exhibit No. 4.)

Dr. Myers did not enter into a purchase agreement at that time but later placed an order with Wells Labberton, the salesman of Modern, who had talked with the doctor on previous occasions and made the actual sale. The contract was that Modern would sell to Parkview Inc., two complete stations and twenty Vendettes for a total purchase price of $87,-434.00 less a deduction of $18,775.34, since Parkview (or Dr. Myers) would assemble and install the equipment. Sales tax $2,758.75 and warranty price of $260.00 were added making the sales price to Dr. Myers total $71,727.41. (Plaintiff's Exhibit 6.) Dr. Myers had to do some financing but for the purpose of this action he paid the entire purchase price to Modern Refrigeration Company.

Modern Refrigeration Company ordered the equipment from Council Manufacturing Corporation and directed that it be shipped by rail to Parkview Inc., Modern agreed to pay $46,081.50 (Defendant's Exhibit 7) and did pay a part, but $15,000.00 is still owing.

According to the testimony of Dansby Council, the ordered equipment, having been inspected, was shipped to the State of Washington as ordered by Modern.

When it arrived in the State of Washington, Dr. Myers, with his employees and Modern Refrigeration Company, by its employees, undertook to assemble and install the equipment at locations selected by Dr. Myers.

Almost before he started, Dr. Myers was dissatisfied with both the venture and the equipment. He had placed the order for the unassembled equipment February 28, 1962, it arrived in April 1962 and his crew together with helpers from Modern started assembling it and placing it on location. On May 25, 1962 he wrote Modern he was returning the entire "Handy Dan" equipment and sued in the State Court for rescission. That suit in the State Court of Washington resulted in a judgment in his favor and against Modern for $77,288.19 which has

not been collected (except for a dividend of eight per cent) because Modern became insolvent. An unsuccessful attempt was made in the suit in the State of Washington to make Council Manufacturing Company a party.

■■ It is apparent from what has been said that there is no privity of contract between the plaintiff and the defendant and if the law applicable in this case requires privity between the parties in order that an action may be maintained for breach of the implied warranty of fitness, it is decisive against the plaintiff of a part at least of his alleged cause of action. The contract for the sale of the equipment was consummated in Arkansas upon the acceptance of the purchase order and delivery of the equipment to the carrier to be transported to Parkview Inc., as ordered by the purchaser f.o.b. Fort Smith, Arkansas. Bloom v. Edw. Miller & Co., 118 Ark. 601, 176 S.W. 673; American Jobbing Ass'n v. Wesson, 92 Ark. 287, 122 S.W. 664; Templeton & Adams v. Equitable Mfg. Co., 79 Ark. 456, 96 S.W. 188. Therefore, the law of Arkansas is controlling with respect to this feature of the present case. Leflar, Conflict of Laws, 1938 Edition, Section 91, page 206; 1959 Edition, Section 122, page 230.

■ Prior to the adoption of the Uniform Commercial Code the lack of privity was a defense in any action for alleged breach of an implied warranty of fitness. Delta Oxygen Co. v. Scott, 238 Ark. 534, 544, 545, 383 S.W.2d 885; Green v. Equitable Powder Manufacturing Co., D.C., 94 F.Supp. 126, 128; Drury v. Armour & Co., 140 Ark. 371, 216 S.W. 40; Nelson v. Armour Packing Co., 76 Ark. 352, 90 S.W. 288. The only modification of this rule by the provisions of the Uniform Commercial Code is that found in Section 85–2–318 of Ark.Stat.Ann. which provides:

"Third party beneficiaries of warranties express or implied.—A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is

reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section. [Acts 1961, No. 185, § 2–318.]" Delta Oxygen Co. v. Scott, 238 Ark. 534, 545, 546, 383 S.W.2d 885.

In the Delta case, supra, the court further modified the rule by holding that an employee of the original purchaser is not barred by the defense of privity, and the Court finally said:

"It is fair to the Bench and Bar to say that we reserve for future cases the right to review our holdings on this entire matter of privity in all cases of breach of warranty." Delta Oxygen Co. v. Scott, 238 Ark. 534, 547, 383 S.W.2d 885, 893.

However, prior to any further pronouncement in the light of this omen or prediction of possible further limitation upon the long established rule that a stranger to the contract could not recover for a breach of an implied warranty of fitness, the General Assembly of Arkansas legislated upon the subject by declaring:

"Section 1. The lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods. Section 2. The provisions of this Act shall not apply to litigation pending on the date it becomes effective." Act 35 of 1965; Ark.Stat.Ann. 85–2–318.1.

Thus there can be no question as to the right of the plaintiff to assert a cause of action against the defendant for alleged breach of implied warranty of the fitness of the ice making and ice vending equipment which he purchased from Modern Refrigeration Company, if Act 35 of the Acts of the General Assembly of Arkansas for the year 1965 is applicable. The Act was considered by the Supreme Court of Arkansas in the case of Knowles v. Vick Chemical Co., 240 Ark. 125, 398 S.W.2d 204. Knowles filed suit on the 16th day of February 1965 against Vick Chemical Co., for damages for breach of implied and express warranties as to the fitness of drugs manufactured and distributed by it and as a result of the use of which she had suffered certain injuries. The defendant sought to dismiss the complaint for lack of privity between the parties and the trial court dismissed it. It was apparent that the suit had been filed prior to the passage of Act 35 of 1965, as is evident from the opinion on appeal, but counsel for the plaintiff, or the appellant, argued that the long established rule was unsound and in support of its position referred to the limitation announced by the Court in the case of Delta Oxygen Co. v. Scott, supra, and also referred to the Arkansas General Assembly's indicated recognition of the unsoundness of the rule by the enactment of Act 35 of 1965. All of which was an apparent effort to persuade the court to further modify the long established rule, the possibility of which was indicated by the Court in the warning given in the Delta Oxygen Co., case, cited supra. The Court declined to do this. After emphasizing that the Act did not apply to litigation pending on the date it became effective and after holding that the Act became effective on June 8, 1965, the Court said:

"While it is true that this court has been moving toward a reexamination of its position as to the necessity of privity in cases of this character (Delta Oxygen Co., v. Scott, supra) we now conclude that as to the real dispositive question in this case that we are bound by the clear and unambiguous provisions of said Act 35. It squarely states that lack of privity shall not be a defense only in such actions filed after its effective date which obviously is not the case as to the instant suit. *Since the whole question was before the Legislature we are not inclined, nor do we feel at liberty to enlarge*

*upon the relief spelled out in the Act. (Emphasis supplied.)"* Knowles v. Vick Chemical Co., 240 Ark. 125, 127, 398 S.W.2d 204, 205.

Thus speculation as to whether the Arkansas Court in a case of this sort would further modify the rule of privity need not be indulged.

■ In the instant case stipulation of counsel as well as the records of this court in Civil Action No. 1893 between the same parties, of which the Court will take judicial notice, disclose that this identical action was pending on June 8, 1965 the date Act 35 of 1965 became effective. The complaint in Civil Action 1893 was thereafter dismissed without prejudice pursuant to order of the Court, and thereafter an identical complaint between the same parties was filed in this Civil Action No. 2037. The Court is of the opinion that notwithstanding the dismissal of the complaint in Civil Action No. 1893, since the present action is identical it follows that this "litigation [was] pending on the date" Act 35 of 1965 became effective, and therefore the provisions of the Act do not apply to this cause of action.

■ However, if it be assumed that this litigation was not pending on the date Act 35 of 1965 became effective, that is June 8, 1965, nevertheless there are further reasons why the Act must be declared inapplicable in this case. The established rule in Arkansas is that statutes are to be construed as having only a prospective operation, unless the purpose and intention of the Legislature to give them retroactive effect is expressly declared or is necessarily implied from the language used. State ex rel. Moose v. Kansas City & Memphis Ry. & Bridge Co., 117 Ark. 606, 174 S.W. 248; State ex rel. Attorney General v. Sebastian Bridge District, 204 Ark. 340, 161 S.W. 2d 955; Beavers v. Myar, 68 Ark. 333, 58 S.W. 40; Fayetteville B & L Assn. v. Bowlin, 63 Ark. 573, 39 S.W. 1046. Nothing is said in Act 35 of 1965 with reference to causes of action accruing prior to the effective date of the Act. This omission would not be significant except for the provisions of Section 2 of the Act providing that the Act "shall not apply to litigation pending on the date it becomes effective." The omission in the light of this provision may be said to indicate an implied intention of the General Assembly for the Act to be applicable to all causes of action accruing prior to the effective date of the Act which were not filed until after the effective date of the Act. Indeed in support of this contention counsel for the plaintiff points to the language of the opinion in the Knowles case, supra, wherein it was said.

"It [Act 35 of 1965] squarely states that lack of privity shall not be a defense only in such actions filed after its effective date which obviously is not the case as to the instant suit." Knowles v. Vick Chemical Co., 240 Ark. 125, 127, 398 S.W.2d 204, 205.

However, this sentence must not be considered out of context with the language of the entire paragraph of which it is a part. The entire paragraph, which is quoted, supra, together with other portions of the opinion reflecting argument of counsel that the rule of privity should be abandoned, leads one to conclude that what the Court was saying was that inasmuch as the General Assembly had legislated upon the subject it would not further modify the rule with respect to a case of the sort there involved which had been filed and was pending at the time of the effective date of the Act. Nevertheless, if this be not a reasonable interpretation of the meaning of the language used in the opinion and if the language be accepted as meaning that privity shall not be a defense to the extent provided in the Act in *any* action filed subsequent to the effective date of the Act, then the statements and conclusion in that respect are dictum, for in that case the action had been filed prior to and was pending on the effective date of the Act, and it was not necessary to a decision of the issues in that case that the Court concern itself with the law with respect to actions filed subsequent to the effective date of the Act. Honorable John E. Miller, Senior Judge of this Court, so held in the case of Lanell G. Tritt, Admrx. v. Ford Motor Co., Civil

No. 1915, Fort Smith Division in an unpublished letter opinion dated March 18, 1966; and he there held that Act 35 of 1965 was not retroactive and did not apply to causes of action accruing prior to the effective date thereof.

If Act 35 of 1965 should be held to be applicable to causes of action accruing prior to its effective date, it would deprive the defendant in this action of the defense of lack of privity with respect to the contract here involved, which defense was available to the defendant at the time the contract was entered into. Indeed the Act takes away a common law defense and creates a new cause of action not theretofore existing in the common law.

■ In the case of Gillioz v. Kincannon, Judge, 213 Ark. 1010, 214 S.W.2d 212, the Supreme Court of Arkansas had under consideration the constitutionality of Act 347 of the Acts of the General Assembly of Arkansas for the year 1947, Ark.Stat.Ann. 27–340. The Act provided that anyone doing any work or performing any services in the State would be deemed to have appointed the Secretary of State as an agent upon whom service of process could be served in any action arising out of the work done or the services performed. By express provision the Act was made applicable both retroactively and prospectively. (Sec. 4 of said Act cited supra.) The alleged torts which were the basis for the action admittedly occurred prior to the effective date of the Act. The Court held that the Act was constitutional as applied prospectively but not so when applied retroactively; and the Court granted a writ of prohibition denying the right of the trial court to entertain the cause of action. Aside from the other reasons iterated, this case is decisive of the inapplicability of Act 35 of 1965, supra, in the present action.

■ The Court finds that there was no express warranty of fitness. So, in the absence of an issue as to either implied or express warranty of fitness, it is not necessary to review the evidence with respect to whether there was a breach thereof. However, for such purposes as may be served in the event this case should be appealed, the Court is of the opinion that the plaintiff has failed to sustain the burden of proving that the equipment was not reasonably suitable for making and vending ice; and in such connection the Court finds (1) that the equipment would make and vend ice; and (2) that any defects which existed with respect to such equipment were not such as would cause it not to be reasonably suitable for the purpose for which it was intended.

■ The second cause of action of the plaintiff is predicated upon alleged false representations concerning the equipment contained in the advertising materials of the defendant (Plaintiff's Exhibit 5.) This advertising material was furnished to the plaintiff in the State of Washington by the defendant's distributor, Modern Refrigeration Company. Thus it appears that the tort, if there be one, was perpetrated in the State of Washington and the law of that State would be controlling with respect to such cause of action. Leflar, Conflict of Laws, 1959 Edition, Sec. 111, page 210. However, it is probably of no consequence whether the law of Washington or the law of Arkansas applies with respect to this feature of the case, inasmuch as the rules announced by the decisions of the Supreme Court of the respective States are substantially the same. In the case of Asheim v. Pigeon Hole Parking, Inc., D.C., 175 F.Supp. 320, 327, the Court said:

"The nine essential elements of a cause of action for fraud have been reiterated in case after case by the Supreme Court of Washington. Webster v. L. Romano Engineering Corp., 1934, 178 Wash. 118, 120–121, 34 P.2d 428, 430; Peoples National Bank of Washington v. Brown, 1950, 37 Wash.2d 49, 60, 221 P.2d 530, 536; Graff v. Geisel, 1951, 39 Wash.2d 131, 141, 234 P.2d 884, 889–890; Puget Sound National Bank v. McMahon, 53 Wash.2d 51, 330 P.2d 559, 560 (1958).

" 'These are: (1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.' Webster v. L. Romano Engineering Corp., supra, 178 Wash. 118, 34 P.2d 430.' "

To the same substantial effect as to the law in Arkansas see the case of Sliman v. Colorado Milling and Elevator Co., 203 Ark. 834, 158 S.W.2d 919.

With possibly two exceptions the advertising material offered in evidence via Exhibit 5, discloses no material representations of fact. The exceptions relate (1) to the 1500 pound daily capacity of the ice makers, being Model V–15 R purchased by the plaintiff (inside cover page Plaintiff's Exhibit 5; defendant's Exhibit 7;) and (2) to the capacity of the Vendettes to hold 96 bags of ice in vending position (next page following inside cover page of Plaintiff's Exhibit 5.)

With respect to the capacity of the ice makers it should be noted that the literature or advertising pamphlet contained this condition: "Ice capacities listed are maximum performance under ideal conditions. Capacities may vary as much as 35%—depending upon water, ambient and condensing temperatures." (Inside cover page of Plaintiff's Exhibit 5) While the plaintiff testified that he had purchased air and water coolers for the purpose of taking care of the 35% differential mentioned in the advertising and that he was given to understand that the coolers would take up this 35%, on cross examination, however, it was brought out that no one had told the plaintiff that the air and water coolers would take up the 35% difference; at least no one in the employ of defendant.

With respect to the capacity of the Vendettes to hold 96 bags of ice in vending position the Court finds that as of the time of the sale the Vendettes if properly installed and properly serviced and maintained would hold such number of bags of ice in vending position.

To conclude this phase of plaintiff's alleged cause of action the court finds (1) that there were no material representations of fact made by the defendant, or its agents or employees, to the plaintiff prior to or at the time of the sale of the equipment to him, which were false; (2) if any were false, they were not known to be false by the defendant, or its employees or agents; (3) nor were such representations made with the intent to deceive the plaintiff.

The third cause of action of the plaintiff is predicated upon an alleged breach of a contract dated March 17, 1963, (Plaintiff's Exhibit 82) entered into by the defendant with its distributor Modern Refrigeration Company, Inc., under the terms of which the defendant agreed to furnish at its expense "supervision, parts, and material as required to place all ice vendors and manufacturers sold to Parkview in good working order and as described in pamphlet entitled " 'The New Giant in Vending' being form number 401–1261" (The pamphlet being the one offered in evidence as a part of Plaintiff's Exhibit 5). The contract having been entered into in the State of Washington the law of that State will control as to the rights of the parties with respect to this feature of the case, Leflar, Conflict of Laws, 1938 Edition, Sec. 91, page 206; 1959 Edition, Sec. 122, page 230.

In consideration of the agreement of the defendant in the contract of March 17, 1963, Modern Refrigeration Company, Inc., agreed to pay the defendant, not later than April 1, 1963, the sum of $15,500.00. The evidence clearly reflects that at least $15,000.00 of this amount was the balance due the defendant from Modern with respect to the purchase originally by Modern of the equipment sold by it to the plaintiff. The evidence is undisputed that this amount has never been paid. The plaintiff, admittedly a third party beneficiary

of the contract of March 17, 1963, (see the testimony of Dansby Council, president of defendant company) now seeks to recover from the defendant for an alleged breach of the contract, notwithstanding that the consideration has not been paid by Modern Refrigeration Company, Inc. In Vol. 17A, C.J.S. Contracts § 529 at page 1022, it is said:

"One seeking to take advantage of a contract made for his benefit by another must take it subject to its terms and conditions, and he must take it subject to all legal defenses".

Among the cases cited in support of the statement is the case of Kinne v. Lampson, 58 Wash.2d 563, 364 P.2d 510; Chandler v. Washington Toll Bridge Authority, 17 Wash.2d 591, 137 P.2d 97. Upon these authorities the court concludes that the plaintiff has no cause of action as a third party beneficiary under the aforementioned contract.

 Further with regard to this last asserted cause of action of the plaintiff, meticulous attention is called to the language of the agreement between Modern and the defendant with respect to the obligation of the defendant in connection with the repairs to be made to the equipment. The defendant did not undertake "to place all ice vendors and manufacturers sold to Parkview in good working order * * *." This was the undertaking of Modern Refrigeration Company, Inc., in its contract with the plaintiff entered into on the same date of March 17, 1963 (Plaintiff's Exhibit 81). The defendant undertook only to furnish at its expense "supervision, parts, and material as required to place" the equipment in good working order. This distinction is a matter of substance particularly in light of the fact that all the testimony of the plaintiff in this regard was directed to the alleged failure to place the equipment in good working order and not to any failure of the defendant to furnish material and supervision. In this connection the court finds that the defendant did furnish at its expense the supervision, parts and material required to place all the equipment in good working order.

Finally the Court finds that all· of the equipment was in fact placed in good working order, evidence of which fact is found in the testimony of the witness Chester T. Riedinger who acquired most of the equipment in 1965, two years following the last time of the operation of the equipment; and with a minimum amount of repairs resulting from the disuse and lack of maintenance of the equipment, successfully operated the equipment in the ice making and ice vending business; and by proper and regular maintenance encountered only those difficulties which are usual and expected and peculiar to that particular type of business. Also one of the Ice makers and one of the Vendettes was subsequently acquired by the defendant and is being successfully operated without the necessity to date of any major repairs.

For the reasons stated, the Court is of the opinion that the plaintiff is not entitled to recover any of the damages alleged in this action and the defendant is entitled to recover the costs expended by it in defense thereof. Judgment will be entered in accordance herewith.