PEKIN WOOD PRODUCTS COMPANY *v.* BURKHARDT.

4-4334

Opinion delivered June 29, 1936.

1026

*John C. Sheffield*, for appellant.

*A. M. Coates*, for appellee.

SMITH, J.  Appellee recovered a judgment to compensate the damages resulting from a personal injury sustained by him while employed by appellant as the operator of a machine known as a shaper. This machine has a flat steel top, resembling the top of an ordinary table through which protrudes two spindles. Attached to each of these spindles is what is known as a shaper head. This head has four flat faces and is about four or five inches high. There are slots in the face of each head in which are fitted bolts which hold knives onto the face of the head. These heads revolve in opposite directions at a speed of 7,200 revolutions a minute. Along the top of the table is fitted a form through which lumber is passed against the knives to be shaped into the desired forms and dimensions. Because of the enormous speed with which these shaper heads revolve, this machine was known by all parties concerned to be very dangerous and the most hazardous of all the machines operated in appellant's plant.

The type of shaper in use by appellant is operated by two men, one holding the lumber as it passes by one of the shaper heads and the other as it passes by the other head. The cutting or shaping of the lumber is done with a knife which is fitted to the face of the shaper head. The knife is held in position by two bolts, each having a square head on one end and threads on the other upon which screws a hexagonal shaped nut. Under this hexagonal shaped nut fits a round steel washer slightly larger than the nut which fits in between the nut and the knife, when placed on the shaper head. In order to place the knife on the face of the head and to hold it firmly in position, the square heads of the two bolts fit into a slot. These bolts can be moved up and down the slot so as to adjust the position of the knife. In changing the knife on the shaper head if it becomes dull, it is only necessary to unscrew the nuts and to slip a new or sharp knife on in place of the one which had become dull. It is not necessary to remove the bolts from their position in the shaper head.

Appellee was employed as the operator of one of these machines and had been so employed for a number of years. There was no allegation or proof of any failure to instruct him in its use or to warn him of the danger incident to its operation. He was so employed on the morning of April 10, 1935, when a few minutes after he began work, the head of one of the bolts above referred to broke, permitting the bolt to come entirely out of the slot which permitted the top of the knife to swing loose and as a result thereof, the knife caught into the form which appellee was shaping. This not only threw the form with great force against appellee, but the knife broke in many pieces and small parts thereof struck appellee in many places, and he thus sustained the injuries to compensate which this suit was brought.

Appellee grounded his suit upon the proposition that appellant had failed to use ordinary care to furnish him a reasonably safe machine with which to perform his duties, and had failed to use ordinary care to inspect the machine to keep it in a reasonably safe condition. Specifically it is insisted that a defective bolt was used,

which defect could and would have been discovered had due care been employed in its inspection.

The undisputed testimony shows that, because of the dangerous nature of the machine, only the best material was purchased and used. Appellee himself testified that the machines were inspected every other day by a man employed for that purpose, and but for the happening of the accident here complained of, there is no testimony to the effect that this was not as often as due care required, nor was it shown that this usual inspection had not been made. It was shown also that after a bolt had been in use for as much as three months, it was discarded and replaced with a new bolt. There was no testimony showing when the alleged defective bolt had been put in use.

·Appellee himself assigned two causes for his injuries. The first is that the bolt (which was metal) was "rotten," and he gave as his reason for this statement the fact that its head had pulled off.

The bolt was not otherwise defective as appellee stated that the threads of the bolt were all right. His second explanation of his injury was that "the knife caught too big a bite in the lumber and it broke." Appellee was asked whether "the break was a straight new break all the way through, or whether it had any evidence of having an old crack in it." He answered, "It did not show any evidence of having an old crack. It was not rusty and there was no dirt on it."

Appellee testified that on some occasions the knives were changed by the inspector. In other cases the change was made by the operator. He states that after he quit work on the afternoon of the day before his injuries, he himself changed the knife and that he was injured by it a few minutes after he began work the next morning.

Appellee insists that his own and other testimony in his behalf makes an affirmative showing of negligence in furnishing a defective bolt, and in failing to make the inspection which would have discovered the defect. He insists that if this is not true, the doctrine of *res ipsa loquitur* applies, in that the injuries would not have

occurred had there been no negligence on the master's part.

It may first be said that while the machine had no guard, the absence thereof is not assigned as negligence. On the contrary the testimony is to the effect that the nature of the machine and its operation is such that it is impossible to place guards around the heads.

The undisputed testimony is to the effect that the knives were changed every six or seven hours, sometimes every five hours, "it depends on how long they run until they need changing." The operator himself was the judge as to when the change should be made. It was also the duty of the operator, if he changed the knives, to adjust them and to screw up the bolts, and appellee had performed this duty the afternoon before his injuries with reference to the knife which injured him.

We think there was no showing of negligence on the part of the master. The law of the case is well settled and has been stated by this court in many opinions. One of the most recent of these is that of *Rice* v. *Henderson,* 183 Ark. 355, 35 S. W. (2d) 1016. It was there said that in order for a servant to recover because of the master's failure to furnish safe appliances, the burden is on the plaintiff to establish the unsafety or defect in the particular appliance, and that the master either had notice of the unsafe or defective condition or could have known of it by making the inspection which due care required. A master is not required to furnish absolutely safe appliances, but is required only to exercise ordinary care in doing so. No presumption of negligence on the part of the master in failing to furnish a safe appliance arises from the mere happening of an accident. The fourth headnote in that case reads as follows: "Evidence, in an action to recover for an employee's hand cut off by saws in a cotton gin, that a rivet in the toggle gear was defective, without proof that the employer knew or by the exercise of ordinary care should have known of the defect, held insufficient to establish the master's negligence."

When these principles are applied to the testimony in this case, the conclusion is reached that no negligence

on the part of the master was shown. There was no evidence of any defect in the bolt except the fact that its head was pulled off. Appellee admits that inspections were made every other day and that the bolt appeared to be in good condition. The break in it was fresh showing that it had not previously existed, and there was no testimony showing that it had been in use long enough to endanger its safety.

The absence of testimony to show negligence on the part of the master is not supplied by the rule of *res ipsa loquitur*. Among the cases cited by appellee in support of this contention is that of *Chiles* v. *Ft. Smith Commission Company,* 139 Ark. 489, 216 S. W. 11. We there quoted and approved the following statement of the law appearing in the article on negligence, 20 R. C. L., page 156, reading as follows: "More precisely, the doctrine *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as is in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. * * * The presumption of negligence herein considered is, of course, a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case which entitles him to a favorable finding unless the defendant introduces evidence to meet and offset its effect. And, of course, where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged—the doctrine *res ipsa loquitur* has no application."

This statement of the law was again quoted and approved in the case of *Ark. L. & P. Co.* v. *Jackson,* 166 Ark. 633, 267 S. W. 359, also cited by appellee.

The testimony does not make a case which invokes the application of this rule. In the first place, the machine which produced the injury was not shown to have been under the control and management of appellant.

It was under the control and management of appellee. He replaced the knife which injured him and made such adjustments as his long experience suggested were proper and necessary. Nor is there "an absence of any explanation by the defendant tending to show that the injury was not due to his want of care."

The testimony suggests several probable causes of the injuries, for none of which would appellant be liable. One of these was vouchsafed by appellee himself, to-wit: "The knife caught too big a bite in the lumber and it broke." In replacing the knife it was appellee's duty to so adjust it that it would not take too large a bite.

Now it is apparent that if the edge of the knife were placed exactly flush with the face of the shaper head, it would not cut at all and the extent of the bite would depend upon the extent to which the blade protruded beyond the face of the shaper head. The more it protruded, the greater the bite and, in view of the fact that it made 7,200 revolutions per minute, it is apparent that the protrusion of the knife should have been very slight.

Other probable causes of the injuries, for none of which appellant would be liable are these: The bolt may have been screwed too tight. It may have been screwed so tightly as to impair the tensile strength of its head, thus causing the head to break and come off. The bolt may not have been sufficiently tightened, thus leaving enough play, as witnesses expressed it, to take too large a bite in the wood that was being shaped, and the added leverage may have caused both the knife and the bolt to break. The knife may have protruded too far beyond the face of the shaper. We conclude therefore that the rule *res ipsa loquitur* has no application.

The testimony viewed in the light most favorable to appellee is insufficient to support the judgment, and it must, therefore, be reversed, and it is so ordered.

MEHAFFY, J., dissents.