ARKANSAS POWER & LIGHT COMPANY *v.* BUTTERWORTH, ADMINISTRATRIX.

4-9885                                   258 S. W. 2d 36

Opinion delivered April 27, 1953.

Rehearing denied June 15, 1953.

*Barrett, Wheatley & Smith, House, Moses & Holmes* and *William M. Clark,* for appellant.

*Elsijane T. Roy, Reid & Roy* and *Frierson, Walker & Snellgrove,* for appellee.

Robinson, Justice. The Northern Rice Milling Company was a partnership composed of J. D. Butterworth, now deceased, and Harry W. Cormier. About 1:00 A. M. on November 10, 1948, a rice mill belonging to the partnership was destroyed by fire. This suit was filed on August 16, 1950, by Frances M. Butterworth, Administratrix of the estate of J. D. Butterworth, Harry W. Cormier, and also eleven insurance companies under subrogation clauses in policies of fire insurance. It is alleged that the fire was caused when an excessive voltage of electricity entered the mill due to the negligence of the defendant. There was a judgment for the plaintiffs in the sum of $256,898.48.

The defendant company owned and maintained a transformer station on the mill property near the main building for the purpose of reducing the line voltage from 13,800 down to about 250 volts. About 11:30 A. M. on the 9th day of November, 1948, there was apparently a flash-over from the primary line, where it was at-

tached to the bushing on the top of one of the transformers, to the transformer case. At this time the fuses at the lightning arrestors on the cross arm of the primary pole burned out. An employee of the Arkansas Power & Light Co. put in new fuses and switches at the top of the pole and told the mill operators that the condition had been remedied. At that time one motor was started in the mill to test the flow of electricity, and it seemed to be working all right. Some work was being done in the mill; the employees were cleaning up and some repair work that required the use of an electric welding machine was being done. Also all of the machinery was oiled. Subsequently, about midnight, the electric motors were turned on, and after they had been running for an hour or so, it was discovered that the mill had caught fire.

A few days later an inspection was made by employees of the Arkansas Power & Light Co. to determine if there was any defect in the transformer station. At that time the only apparent damage they found was that a portion of the bushings on top of the transformers had been chipped off. Just what caused this is uncertain, and the evidence is conflicting as to whether it would be a serious defect. Subsequently others, apparently employees of the insurance companies that carried the insurance on the mill, made an investigation to determine if there was any defect in the electrical apparatus making up the transformer station. The transformers were removed and brought to Little Rock where they were thoroughly examined at the Fagan Electric Company by representatives of the insurance companies.

Appellees contend that the bushings on the transformers were defective; that the fuses at the lightning arrestors were not of the size or kind required; and that the transformer station was not properly grounded. Appellant denies it was in any manner negligent or that the fire was caused by electricity. Without abstracting here the testimony in the case which is voluminous, suffice it to say that the evidence is sufficient to make it a jury question as to whether the fire was caused by excessive voltage.

Likewise there is evidence to the effect that regardless of anything else, if the transformer station had been properly grounded, excess current could not have gotten into the mill. There is also evidence to the effect that if the electric system in the mill had been sufficiently grounded, no excessive current could have entered the building. This evidence was sufficient to send the case to the jury on the questions of negligence on the part of the power company and contributory negligence on the part of the mill owners.

There are two errors for which the cause must be reversed. First, the court erred in submitting to the jury the issue involving the doctrine of *res ipsa loquitur* under Instruction No. 5 as follows: "The burden rests upon the plaintiffs to prove by a preponderance of the evidence that the defendant was negligent and that the fire and their losses therefrom were the direct and proximate result of the negligence of the defendant. However, if you find from a preponderance of the evidence that the fire was caused by high voltage from the defendant's power lines entering the rice mill, and that the instrumentality or thing which caused the loss was under the control and management of the defendant, and that no damage would have occurred in the ordinary course of events, if the defendant in the control and management of its appliances had used proper care, then the happening of the loss gives rise to a presumption of negligence on the part of the defendant, and the burden shifts to the defendant to account for the cause of the loss by showing that it was not caused by lack of care on defendant's part."

The courts have repeatedly held that the doctrine of *res ipsa loquitur* does not apply where the instrumentality which may have caused the damage was not in the exclusive control of the defendant. In *Coca-Cola Bottling Company* v. *Hicks,* 215 Ark. 803, 223 S. W. 2d 762, it is said: "There are statements in the decisions of this State, and other states, that for *res ipsa loquitur* to apply it must be shown that the injury complained of was caused by an agency or instrumentality under the exclusive control and management, at the time of injury,

of the one whose liability is asserted.'' In speaking further of the *res ipsa loquitur* doctrine in the same case, it is said: ''The scope of this permissible inference must be carefully limited to exclude cases where the circumstances of the injury do not tend substantially to prove that negligence in the defendant, and in nobody else, caused the plaintiff's injury. To make certain that the injury has not been caused by somebody else through some intervening negligence, it is ordinarily required that the instrumentality causing injury [must] have been in defendant's exclusive possession and control up to the time of the plaintiff's injury.''

In *Oklahoma Gas & Electric Company* v. *Frisbie,* 195 Ark. 210, 111 S. W. 2d 550, it is said: ''To say that appellee's intestate came to his death by reason of appellant's negligence would require speculation not only as to the amount of current which proved fatal but also as to the method by which such alleged extra charge entered the house. Neither allegation is established by any direct testimony, and *res ipsa loquitur* can not be applied as a rule of law in a case where it is shown that the result, in this case death, might have been brought about by one of two or more speculative theories, neither of which is included or excluded by any affirmative evidence.''

Here only a portion of the instrumentality was under the control of the defendant. It had the exclusive control of the transformer station and the wire up to where it entered the plaintiff's mill; but from that point on all of the wiring, switches, fuses, motors, lights, welding apparatus, and grounding facilities were exclusively under the control of the plaintiffs. The case of *Southwestern Gas & Electric Co.* v. *Deshazo,* 199 Ark. 1078, 138 S. W. 2d 397, is directly in point as to the *res ipsa loquitur* feature of the case. In that case three farmers cut a tree growing near a high voltage line of the Southwestern Gas & Electric Co. The tree fell on the line and broke it, causing it to sag; whereby it came in contact with a telephone wire going to a switchboard where Mrs. Deshazo was the operator. Excessive high voltage passed from the electric line to the telephone wire and

injured her. This Court said: "We think it may be announced that the only instance in which the rule of *res ipsa loquitur* applies must be that the act or thing causing the injury must have been under the exclusive control and management of the one charged. . . . Certainly the electric company had no control over the office of the telephone company nor the grounding of any of the wires." Likewise in the case at bar, the defendant electric company had no control over the wires in the mill or the grounding of the electric system therein. Therefore it did not have exclusive control of the instrumentality or thing from which the fire may have developed; hence the doctrine of *res ipsa loquitur* is not applicable.

Next, although during the trial of the case plaintiffs had contended that if through defendant's negligence excessive electricity got into the mill and caused the fire, contributory negligence would be no defense and had been over-ruled on that point, the court at their request, over objections of defendant, gave the following instruction No. 6: "The defendant has pleaded contributory negligence as a defense in this case and has offered evidence that the interior wiring in the rice mill was defective. The owners of the rice mill were not required by law to anticipate negligence on the part of the defendant or to take any precaution to protect their property against possible negligence of the defendant. Therefore, if you find from a preponderance of the evidence that the defendant negligently allowed high voltage to enter the rice mill and that this high voltage caused the fire, you should not find the plaintiffs guilty of contributory negligence on account of any failure on their part to anticipate or prevent it, even if you should find that the owners of the mill failed to safeguard it against the entry of high voltage. In other words, no defects in the interior wiring would justify you in finding contributory negligence on the part of the plaintiffs if the fire was caused by negligence of the defendant in allowing high voltage to enter the mill and if the fire would not have occurred without high voltage. The plaintiffs can be charged with contributory negligence only if by some act or failure to act they failed to use that care

which a reasonable, prudent person would have used in the circumstances, and then only if the fire would not have occurred without the act or failure of the plaintiffs contributing thereto. In determining whether the plaintiffs exercised reasonable care the question is whether a person of ordinary prudence, without expert knowledge, would have acted as they did, and they were not contributorily negligent unless they knew, or by reasonable care should have known, of the danger. You are further told that on the issue of contributory negligence, the burden rests upon the defendant, and it must prove contributory negligence by a preponderance of the evidence in order to avoid liability for its negligence, if you find that the defendant was negligent.''

This instruction tells the jury that if through defendant's negligence high voltage got into the mill and caused the fire, then contributory negligence on the part of the plaintiffs was no defense. This was error. In support of the instruction appellees cite *Arkansas Power & Light Co.* v. *Jackson,* 166 Ark. 633, 267 S. W. 359. However, in that case there was no evidence of contributory negligence. The court said: ''Under the undisputed evidence, the deceased was guilty of no negligence and no attempt was made to show that he was guilty of any negligence.'' Whereas in the case at bar there is evidence that excessive voltage could not have got into the mill if the wiring therein had been properly grounded, and the jury could have found that the operators of the mill were negligent in failing to so ground the wire. Ralf Toensfeldt, an electrical engineer, witness for the plaintiffs, testified to the effect that if the mill building had been properly wired and grounded, excessive current could not have entered. Clarence H. LeVee, also an electrical engineer, testified that if the mill had been wired in accordance with the National Electric Code, no excessive voltage could enter it.

In *Arkansas General Utilities Co.* v. *Shipman,* 188 Ark. 580, 67 S. W. 2d 178, there was evidence that the high line had broken and fallen across the house wire. Also there was evidence that pennies were in the fuse

box in the house. The court held there was evidence of negligence and contributory negligence. The Court said: "If they (the electric company) negligently allow their wires to fall or sag, or poles or other apparatus to fall, to the injury of another, they are responsible in damage for the wrong done, *if the party injured is guilty of no culpable negligence contributing to the injury."*

The principal case relied on by appellee on the question of contributory negligence is that of *Southwestern Gas & Electric Co.* v. *Murdock,* 183 Ark. 565, 37 S. W. 2d 100. There it was held that the evidence was not sufficient to show contributory negligence where one was injured in handling an extension cord when he knew it would shock him slightly while carrying 110 volts; but the case specifically recognizes that if the injured party was negligent, he can not recover. It is merely held in the circumstances of that particular case there was no contributory negligence, the same as the holding in *Arkansas Power & Light Co.* v. *Jackson.* But here, in the face of the testimony that the wiring in the mill should have been properly grounded and that an excessive current of electricity could not have gotten into the building if it had been so grounded, we can not say as a matter of law there was no contributory negligence.

In the Murdock case, the court said: "Appellant cites numerous cases to support his contention that appellee can not recover if he was guilty of any negligence. It is unnecessary to discuss these authorities but sufficient to say that this court has many times held in actions of this character that, if the injured party was guilty of negligence which in any way contributed to his injury, so that but for his contributory negligence the injury would not have happened, he can not recover."

Where there is substantial evidence of negligence contributing to cause the damages, such contributory negligence is a defense. The effect of Instruction No. 6 given by the court is to the contrary. The instruction says: "In other words, no defects in the interior wiring would justify you in finding contributory negligence on the part of the plaintiffs if the fire was caused by negli-

gence of the defendant in allowing high voltage to enter the mill, and if the fire would not have occurred without high voltage.''

Electrical engineers testified that if the wires in the mill were properly grounded, excessive electricity could not enter. This evidence made a question for the jury as to whether the wiring facilities in the building were sufficiently grounded; and, if not, did the failure to make the proper ground amount to negligence on the part of the mill owners. If so, such negligence would be a defense to the power company.

For the errors in giving Instructions Nos. 5 and 6 the cause is reversed and remanded for a new trial.

*Mr. Justice Millwee* not participating.

PAUL WARD, Justice, dissenting. In my opinion the trial court committed no error in giving instructions No. 5 and No. 6, set out in the majority opinion, and that, therefore, the conclusion reached by the majority is untenable.

It must be kept clearly in mind that this case was tried in the lower court, by both appellant and appellee, on two general theories, viz: (a) The fire was caused by low or ordinary voltage, and; (b) by high voltage. It must further be kept in mind that the two instructions under consideration deal only with high voltage and have nothing whatever to do with low voltage, and that the majority opinion find no error with instructions dealing with low voltage.

*Instruction No. 5.* The reasons given by the majority, and the authorities cited in support, are to the effect that the doctrine of *res ipsa loquitur* ''does not apply where the instrumentality which may have caused the damage was not in the exclusive control of the defendant [appellant].'' In this case I can not understand how the majority arrive at the conclusion that appellant was not in exclusive control of the high voltage. It is obvious to me that the mill operators were in no way in control of high voltage that might be transported

over appellant's own lines, and I doubt if the majority would contend that, under the law, they were charged with any control or that they were under any legal duty to defend against it. The mill just happened to be there when the high voltage entered. If a tractor explodes and hurls the engine against a person and kills him he would have just about the same control over the engine as the mill owners had over the high voltage in this instance.

*Instruction No. 6.* The majority object to this instruction because, in effect, it deprived appellant of the defense of contributory negligence on the part of appellee IN SO FAR AS HIGH VOLTAGE WAS CONCERNED.

Obviously the only basis for the majority's position is that appellee was negligent in not maintaining a proper ground [for high voltage] at the mill. It must be conceded that if appellee was guilty of any negligence in this respect the burden was on appellant to prove or, at least, offer evidence tending to prove it. If I am not misinformed as to what the record shows there is no evidence of any negligence in this respect on the part of appellee. Apparently the majority concede so much because they say ". . . there is evidence that excessive voltage could not have got into the mill if the wiring therein had been properly grounded . . ." This is drawing the line pretty thin to justify a reversal in this case because, by the same token, if appellant had maintained a proper ground at the transformer no high voltage would or could have ever reached the ground maintained by appellee. To have permitted the jury to inquire into the negligence of appellee under this state of facts would amount to submitting a puzzling question not susceptible of an intelligent solution.