DELTA OXYGEN CO. *v.* SCOTT

5-3290                                   383 S. W. 2d 885

Opinion Delivered October 26, 1964.

[Rehearing denied December 7, 1964.]

*Smith, Williams, Friday & Bowen,* By: *Boyce R. Love,* for appellant.

*Gordon & Gordon,* for appellee.

ED. F. McFADDIN, Associate Justice. Appellee Tommy Scott filed two actions against appellant, Delta Oxygen Company (hereinafter called "Delta"), seeking to recover damages for injuries he sustained while using Delta oxygen in his welding work. In one action Scott claimed that Delta was guilty of negligence which caused his injuries; and in the other action Scott claimed that Delta breached an implied warranty in regard to the oxygen. The two actions were consolidated for trial; the jury verdict and judgment was for Scott; and Delta brings this appeal, listing six points:

"1.   The doctrine of Res Ipsa Loquitur should not have been applied in this case; and, there being no evi-

dence of any specific acts of negligence on the part of the defendant, a verdict should have been directed by the trial court for the defendant.

"2. There was no privity of contract between the plaintiff and the defendant, and it was error for the trial court to overrule the defendant's demurrer to the warranty suit.

"3. The court was in error in failing to direct a verdict for the defendant concerning the warranty action, there being no proof that the product failed or was unfit for the purpose intended.

"4. It was error for the court to refuse to strike all of witness Vernon Myers' opinion testimony.

"5. It was error for the court to give plaintiff's instruction No. 2.

"6. It was error for the trial court to deny the defendant a new trial when one of the jury commissioners was a party in a case requiring the intervention of the very jury panel he helped select."

We will discuss some of these assignments under our own topic headings, and the disposition of such matters discussed will make unnecessary the discussion of all the other points.

I. *Res Ipsa Loquitur.* The Trial Court submitted the negligence facet of the case to the jury with instructions incorporating the doctrine of *res ipsa loquitur,* and the appellant claims that the Trial Court was in error in so doing. This point has given us most serious concern. The question is whether the doctrine of *res ipsa loquitur* was applicable to the negligence action under the evidence in this case; and to understand the point it is necessary to state in some detail the factual situation.

Tommy Scott was skilled in the welding business, specializing in the work of "bit re-tipping." He would take worn down oil well bits and re-tip them by welding new metal on the worn out part. At the time here involved, Tommy Scott was working for his brother, Harry

Scott, in the shop of the latter in Morrilton, Arkansas. Harry Scott had purchased nine cylinders[1] of oxygen from Delta at its place of business in Little Rock and had transported the cylinders to his workshop in Morrilton. The cylinders were placed standing upright against the wall. The oxygen from one cylinder had been used by Tommy Scott in his welding work, and he was preparing to use the oxygen from the second cylinder when the explosion or fire occurred which caused his injuries.

Tommy Scott testified that in the welding work he was doing it was necessary to use an acetylene torch for the purpose of a flame, and oxygen to make sufficient heat to melt the metal. To make this combination possible he was using a "Victor J-27" torch,[2] from which one green colored rubber hose went to the pressure gauge on the oxygen cylinder and one red colored rubber hose went to the acetylene generator. Tommy Scott testified that when he saw that the oxygen from cylinder No. 1 was running low in the torch, he turned off the oxygen valve and also the acetylene valve on the torch and placed the orifice and the torch in water to extinguish the flame, and laid the torch on the floor.

Tommy Scott described how he then went about the task of putting the new or No. 2 cylinder of oxygen into use: the oxygen cylinder was about five feet high and of very heavy metal, since the oxygen in the cylinder was under 2200 pounds of pressure; he removed the heavy metal cap from the top of the No. 2 oxygen cylinder and slightly and momentarily turned on the valve of the cylinder to allow a small amount of the pressurized oxygen to escape; then he turned off the valve on the new·

---

[1] The empty cylinders were to be returned to Delta after the oxygen had been used.

[2] This identical·torch used by Tommy Scott was exhibited to the jury and its use and functions explained. Likewise, in oral argument before us, counsel for both sides exhibited the torch and explained its use and functions. It is a somewhat narrow metal instrument about 20 inches long, easily held in the hands of the welder; and the rubber tubes are attached to the end of the torch toward the sources of supply. On the torch there are separate control valves for each ingredient —oxygen and acetylene—to regulate the flowage or stoppage of same; and at the firing end of the torch there is an orifice, or small opening, where the flaming acetylene is heated by the oxygen and the heat thus applied to the material sought to be welded.

oxygen cylinder; *attached to the oxygen valve on the new No. 2 cylinder his own regulator or pressure gauge, to which was connected the green rubber hose that was to convey the oxygen from the new cylinder to the torch when he should again turn on the valve of the new oxygen cylinder.*

All of the above was accomplished without mishap of any kind. Then Tommy Scott again turned on the valve on the top of the oxygen tank, thereby allowing the oxygen to flow through the pressure gauge into the green colored hose; and instantly when he turned on the valve on the new oxygen cylinder an explosion and fire occurred and he was painfully and seriously burned.

Investigation disclosed that the explosion and/or fire had occurred in the regulator or pressure gauge which Scott had attached to the oxygen tank. This regulator or pressure gauge had two indicators, one to show the pressure of oxygen in the new cylinder, and the second to show the amount of oxygen leaving the cylinder. The explosion blew away entirely the second indicator; and some of the parts of it were found on the floor of the shop beside the oxygen cylinder which had fallen down. The indicator of the regulator which showed the pounds of pressure was still attached to the oxygen cylinder, even after the fire and explosion.

We have stated in considerable detail enough of the facts to show that the explosion or fire did not occur in the oxygen tank, or in the valve on the oxygen tank, or when Scott first opened the valve on the tank to allow some of the oxygen to escape before he put his own pressure gauge on the oxygen tank. Absent any contributory negligence—and we must so find in the light of the jury verdict—the question now before us is whether the facts as heretofore stated—and we have stated them in the light most favorable to the jury verdict—make a case for the application of the rule of *res ipsa loquitur.*[3] The trial

---

[3] Sometimes it is called "the rule" of *res ipsa loquitur*, and other times it is called "the doctrine" of *res ipsa loquitur*. The cases, annotations, and law review articles on *res ipsa loquitur* are countless. We mention only a few. In Ark. Law School Bulletin of May 15, 1940 (Vol. 8, No. 2) at page 43, there is an article entitled, *"Res Ipsa*

Court so held, and the correctness of that ruling is the point now before us.

In Chiles v. Ft. Smith, 139 Ark. 489, 216 S. W. 11, Mr. Justice Frank G. Smith, in discussing the doctrine of *res ipsa loquitur,* quoted from 20 R.C.L. p. 187, as follows:

" 'More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care.''

To paraphrase the above as applicable to the case at bar is to say that when a product is made by a defendant for a recognized use, and the plaintiff so uses the product and without fault or negligence on his part receives injury, then the mishap itself speaks negligence and the burden is on the defendant to show itself free of negligence. Is the doctrine of *res ipsa loquitur* applicable to this case? One of the clearest recognized essentials of the plaintiff's right to invoke the doctrine of *res ipsa loquitur* is that the plaintiff's injury must have come about solely because of the defendant's product. This is stated in 38 Am. Jur. p. 996, ''Negligence'' § 300:

''It is essential to the application of the doctrine of res ipsa loquitur that it appear that the instrumentality which produced the injury complained of was at the time of the injury under the management or control of the defendant or of his agents and servants. *When, however, it appears that the victim had exclusive control of the offending thing, no imputation of responsibility will attach to the defendant.* It is not only necessary to show that

*Loquitur* in Arkansas." See also 9 Ark. Law Review, p. 98, for that portion of the address of Dean Prosser concerning *res ipsa loquitur.* See annotation in 56 A.L.R. p. 493, "Applicability of *res ipsa loquitur* to explosion of gases or chemicals." See also annotation in 23 A.L.R. 484, "Applicability of *res ipsa loquitur* in case of boiler explosion."

the offending instrumentality was under the management of the defendant, but it must be shown that it proximately caused the injury, or that the injury was caused by some act incident to the control of the instrumentality. The doctrine does not apply where the agency causing the accident was not under the sole and exclusive control of the person sought to be charged with the injury. If it appears that two or more instrumentalities, only one of which was under defendant's control, contributed to or may have contributed to the injury, the doctrine cannot be invoked." (Emphasis supplied.)

We have a number of Arkansas cases which have direct holdings on this point. In *Kroger* v. *Melton,* 193 Ark. 494, 102 S. W. 2d 859, Melton purchased pork chops at the Kroger store, took them home, cooked and ate them. He became ill and sued Kroger for damages, alleging the pork chops to have been contaminated when sold to him. Melton did not attempt to show Kroger's negligence, but claimed that the doctrine of *res ipsa loquitur* cast on Kroger the burden of proving the absence of its own negligence in handling the pork chops. But this Court held that the doctrine of *res ipsa loquitur* was not applicable, saying:

"Appellee seeks to invoke the doctrine of *res ipsa loquitur* to supply the missing link in his testimony. But this doctrine has never been applied where the instrumentality which caused the injury was not in the exclusive control of the defendant at the time of the injury. Many cases to that effect are cited in the brief of appellee. Here the chops alleged to be responsible for appellee's injury were not in the exclusive possession of appellant; on the contrary, they were in the exclusive possession of appellee subsequent to the sale."

In *Mo. Pac.* v. *Shores,* 209 Ark. 539, 191 S. W. 2d 580, Shores was injured when a block of ice fell or was thrown from a troop train. He sued the railroad company and claimed that since he was injured by something which fell or was thrown from the train the doctrine of *res ipsa loquitur* was applicable. This Court held that res ipsa loquitur did not apply, saying:

"The doctrine of *res ipsa loquitur* cannot be invoked in this case to supply the absent proof of negligence because it is necessary, before that doctrine may be applied, that the machinery or object causing the injury be shown to have been under the sole control of the one against whom liability is asserted. 'It is essential to the application of the doctrine of *res ipsa loquitur* that it appear that the instrumentality which produced the injury complained of was at the time of the injury under the management or control of the defendant or his agents and servants. . . . The doctrine does not apply where the agency causing the accident was not under the sole and exclusive control of the person sought to be charged with the injury.' 38 Am. Jur. 996; *Southwestern Telegraph & Telephone Co.* v. *Bruce*, 89 Ark. 581, 117 S. W. 564; *Arkansas Power & Light Company* v. *Jackson*, 166 Ark. 633, 267 S. W. 359; *Herndon* v. *Gregory*, 190 Ark. 702, 81 S. W. 2d 849, 82 S. W. 2d 244. In the case at bar, the evidence showed that the train and its passengers were under the control of an army officer, and that members of the train crew were not allowed to enter the baggage car, from which the ice came, without obtaining permission from the soldiers."

In *Arkansas Power & Light Co.* v. *Butterworth*, 222 Ark. 67, 258 S. W. 2d 36, an action was filed against the power company for damages for loss of a building by fire alleged to have been caused by an excessive voltage of electricity allowed to enter the building through the negligence of the power company. The Trial Court held that the doctrine of *res ipsa loquitur* was applicable, since the electricity was the product of the power company. We held that the Trial Court was in error, saying:

"Here only a portion of the instrumentality was under the control of the defendant. It had the exclusive control of the transformer station and the wire up to where it entered the plaintiff's mill; *but from that point on all of the wiring, switches, fuses, motors, lights, welding apparatus, and grounding facilities were exclusively under the control of the plaintiffs.* The case of *Southwestern Gas & Electric Co.* v. *Deshazo*, 199 Ark. 1078,

138 S. W. 2d 397, is directly in point as to the *res ipsa loquitur* feature of the case. In that case three farmers cut a tree growing near a high voltage line of the Southwestern Gas & Electric Co. The tree fell on the line and broke it, causing it to sag; whereby it came in contact with a telephone wire going to a switchboard where Mrs. Deshazo was the operator. Excessive high voltage passed from the electric line to the telephone wire and injured her. This Court said: 'We think it may be announced that the only instance in which the rule of *res ipsa loquitur* applies must be that the act or thing causing the injury must have been under the exclusive control and management of the one charged. . . . Certainly the electric company had no control over the office of the telephone company nor the grounding of any of the wires.' Likewise in the case at bar, the defendant electric company had no control over the wires in the mill or the grounding of the electric system therein. *Therefore it did not have exclusive control of the instrumentality or thing from which the fire may have developed; hence the doctrine of res ipsa loquitur is not applicable."* (Emphasis supplied.)

Further discussion appears to be unnecessary.[4] We hold that the rule of *res ipsa loquitur* is not applicable in the case at bar since it was clearly shown that the fire or explosion occurred in the plaintiff's own regulator and that the oxygen from the cylinder had previously been allowed to escape without causing any fire or explosion. For the error in submitting the case to the jury on the

[4] Cases from other jurisdictions are in accordance with our holdings. For cases holding the rule of *res ipsa loquitur* to be unavailable in situations somewhat similar to those in the case at bar, see: *Kramer* v. *Hollingshead* (N. J.), 75 A. 2d 861; *McCabe* v. *Boston Gas Co.* (Mass.), 50 N. E. 2d 640; *McDonnell* v. *Montgomery Ward* (Vt.), 154 A. 2d 469; *Conley* v. *United Drug Co.* (Mass.), 105 N. E. 975; and *Marshall* v. *Cameron* (W. Va.), 59 S. E. 959. See also Harper & James "The Law of Torts," Vol. 2, § 19.7. The case at bar is not like the bottled drink cases of which *Coca Cola* v. *Mattice*, 219 Ark. 428, 243 S. W. 2d 15, is one. In those cases the contents of the bottle *in the original package* exploded and caused injury. There had been no opening of the bottle. But, in the case at bar, the oxygen tank had been opened once to allow a small amount to escape. Then, when the plaintiff's own regulator was attached and the oxygen tank again opened, the explosion occurred. So the bottled drink cases are not applicable here.

doctrine of *res ipsa loquitur* the judgment must be reversed and the cause remanded for a new trial.

II. *The Breach of Warranty Action.*[5] The case was submitted to the jury on interrogatories, the first three of which related to negligence and contributory negligence. Interrogatory No. 4 and the answer thereto were as follows:

"Interrogatory No. 4. Do you find from a preponderance of the evidence that the defendant, Delta Oxygen Company, Incorporated, sold the bottle of oxygen in question to Harry Scott and that there was an implied warranty that said bottle was reasonably fit for the use for which it was intended, and that said bottle was not in fact reasonably fit for its intended purpose, and that when it was put to use, the plaintiff, Tommy Scott, sustained personal injuries and damages as the proximate result of a breach of implied warranty? "Answer: Yes."

While insisting that the instructions on *res ipsa loquitur* were correct, appellee further insists that, even if the instructions on *res ipsa loquitur* were erroneous, nevertheless the judgment should be affirmed because of the finding of the jury that appellant was guilty of breach of warranty. We cannot agree with the appellee in such contention because we find no substantial evidence of breach of any warranty. Ark. Stat. Ann. § 85-2-315 (Add. 1961) reads as follows:

"Implied Warranty—Fitness for particular purpose.—Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose. [Acts 1961, No. 185, § 2-315.]"

The oxygen sold by Delta to Harry Scott was supposed to increase the heat of a flame, and there is noth-

---

[5] No point is made on this appeal questioning the ruling of the Trial Court on the consolidation of the negligence action and the breach of warranty action. See *Kapp* v. *Bob Sullivan*, 232 Ark. 266, 335 S. W. 2d 819.

ing to show that the oxygen in cylinder No. 2 failed in that responsibility. If the cylinder had exploded, the "bottled goods" cases might apply;[6] but the cylinder did not explode: it was intact even after the fire. The explosion occurred in the regulator which the plaintiff, Tommy Scott, had affixed to the oxygen valve on the cylinder. We have previously detailed that the valve on the oxygen cylinder was first opened and oxygen allowed to escape; the valve on the oxygen cylinder was closed and the regulator of plaintiff attached to the valve on the oxygen cylinder; and then the valve was opened and there was the explosion.

In testimony it was claimed that there must have been some grease in the valve on the oxygen cylinder and that the force of the oxygen forced the grease into the regulator where the explosion occurred; but this was the rankest speculation. If there was any grease on the valve of the oxygen cylinder there is no showing that it got there through any breach of warranty by Delta. The entire evidence of breach of warranty is based on speculation. In *Kapp* v. *Sullivan Chev. Co.*, 234 Ark. 395, 353 S. W. 2d 5, we discussed, not only the matter of *res ipsa loquitur* being there inapplicable but we also discussed, the fact that Kapp's case rested entirely upon conjecture and speculation; and said:

"**Several** *possible* causes of the break are argued, but in truth, they are only *possibilities,* and do not reach the status of probabilities. Negligence cannot be established by guess work. As stated in *Henry H. Cross Co.* v. *Simmons,* 96 F. 2d 482, a decision under Arkansas law: 'To submit to a jury a choice of possibilities is but to permit the jury to conjecture or guess, and where the evidence presents no more than such choice it is not substantial, and where proven facts give equal support to each of two inconsistent inferences, neither of them can be said to be established by substantial evidence and judgment must go against the party upon whom rests the burden of sustaining one of the inferences as against the other.' In *Glidewell* v. *Arkhola Sand & Gravel Co.*,

---

[6] See Footnote No. 4, *supra,* for one of these cases.

212 Ark. 838, 208 S. W. 2d 4, this Court said: 'Conjecture and speculation, however plausible, cannot be permitted to supply the place of proof, . . .' "

On account of the erroneous instructions on *res ipsa loquitur* the judgment of the Circuit Court is reversed and the cause is remanded for a new trial, not only on the issue of negligence but also on the issue of breach of warranty. In view of the likelihood of another trial we will now discuss some of the other points which present questions that may arise on retrial.

III. *The Witness Vernon Myers*. Appellant's fourth point is: "It was error for the court to refuse to strike all of witness Vernon Myers' opinion testimony." We find no merit in this point. The witness Myers testified that he had been a welder for twenty years and was then teaching welding in the vocational training school at Morrilton, Arkansas. He modestly disclaimed being an "expert," but he was certainly well qualified by professional, scientific, and technical training, and also by practical experience, to answer the questions propounded to him. The Court did not abuse its discretion in allowing the witness to give his opinion. See *Firemen's Ins. Co. v. Little,* 189 Ark. 640, 74 S. W. 2d 777; and *Ratton v. Busby,* 230 Ark. 667, 326 S. W. 2d 889.

IV. *Absence Of Privity Between Tommy Scott and Delta Oxygen Company*. Appellant's point No. 2 is: "There was no privity of contract between plaintiff and defendant, and it was error for the Trial Court to overrule defendant's demurrer to the warranty suit."

This assignment brings before us a question now occupying much space in reported cases and in legal periodicals. Appellant's contention is: that Delta sold the oxygen to *Harry Scott;* that appellee Tommy Scott was an *employee* of Harry Scott; that Tommy Scott did not purchase the oxygen from Delta so Tommy Scott is not *in privity* with Delta and therefore cannot maintain an action against Delta for breach of warranty. The case of *Nelson v. Armour,* 76 Ark. 352, 90 S. W. 288, was decided by this Court in 1905. In that case Armour sold a can of

food to a retail dealer in Texarkana, Mr. A. J. Offenhauser. The retail dealer in due course of trade sold the same can of meat to Mr. Nelson, who sued Armour, claiming that there was a breach of warranty as to the fitness of the food. Armour insisted that Nelson did not purchase the meat from Armour so there was no privity of contract between Nelson and Armour on which Nelson could base an action for breach of warranty. In sustaining the contention of Armour, this Court said:

"Unlike covenants as to the title to land, a warranty upon the sale of personal property does not run with the property. There is no privity of contract between the vendor in one sale and the vendees of the same property in subsequent sales. Each vendee can resort, as a general rule, only to his immediate vendor. *Boyd* v. *Whitfield,* 19 Ark. 447; *Bordwell* v. *Collie,* 45 N. Y. 494."[7]

From this quoted language it has been assumed that in Arkansas there can never be a breach of warranty action in a case like this one, except between the immediate parties to the sale unless and until the Legislature passes legislation changing the rule of privity, or the Court modifies or limits the holding in the case of *Nelson* v. *Armour* heretofore quoted. When the Arkansas Legislature adopted the Uniform Commercial Code the privity defense was eliminated in certain instances. That statute, now found in Ark. Stat. Ann. § 85-2-318 (Add. 1961), reads:

---

[7] This case of *Nelson* v. *Armour* has been cited in numerous cases in this State and in numerous annotations and law review articles. See: *Colyar* v. *L. R. Bottling Works,* 114 Ark. 140, 169 S. W. 810; *Heinemann* v. *Barfield,* 136 Ark. 500, 207 S. W. 62; *Drury* v. *Armour,* 140 Ark. 371; 216 S. W. 40 (particular attention is called to the dissenting opinion of Justice Hart in that case); and *Lewis* v. *Roescher,* 193 Ark. 161, 98 S. W. 2d 956. Worthy of study is the article by Dean Prosser in 69 Yale Law Review 1099 entitled, "The assault upon the citadel (strict liability to the consumer)." See also: Annotation in 74 A.L.R. 2d 1111 entitled, "Privity of contract as essential to recovery in negligence action against manufacturer or seller of produce alleged to have caused injury."; and annotation in 80 A.L.R. 2d 488 entitled, "Liability of manufacturer or seller for injury caused by firearms, explosives, and flammables." And see: 28 NAACA Law Journal 204; 29 NACCA Law Journal 41; and 30 NACCA Law Journal 369, 374. The leading recent case is that of *Henningsen* v. *Bloomfield Motor* (N. J.), 161 A. 2d 69. See also 77 C.J.S. p. 1123.

''Third party beneficiaries of warranties express or implied. A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.''[8]

Thus, as to a natural person who is in the family or household of the buyer or is a guest of his household, etc., the Legislature has abolished the defense of privity in a breach of warranty action. Why then should we keep this old rule of ''privity'' against an action for breach of warranty brought by the servant or employee of the original purchaser, as is the situation here? Delta sold the oxygen to Harry Scott, the brother of appellee Tommy Scott. If Harry Scott had resold the oxygen to Tommy Scott, then there would have been the factual situation similar to that which existed in *Nelson* v. *Armour, supra.* But Tommy Scott was the servant and employee of Harry Scott, who directed him to use the oxygen in the work. In short, there was no resale of the oxygen by the purchaser from Delta and we see no sound reason why the employee or servant of a purchaser, using the product in the course of employment as directed, should be barred from suing on the warranty because of any shield of privity.

To apply the strict rule of privity against such an employee as here, would mean that if the purchaser of the oxygen from Delta had been a corporation then there would never have been anyone to sue on the breach of warranty for personal injuries because a corporation could hardly have a burned arm or a burned leg. This simple homely supposition points to the common sense in

---

[8] Appellee has urged that Tommy Scott was "in the family of" Harry Scott and that the above quoted statute would give Tommy Scott a cause of action for breach of warranty against Delta free from the privity defense. There is no need to lengthen this opinion to discuss that point: rather, we prefer to hold that an employee of a purchaser is not barred by the defense of privity in a factual situation like the one here.

allowing an employee of the purchaser[9] to sue on the breach of warranty in a case like the one at bar. The doctrine of privity should not be a shield against a breach of warranty action in a case like the one here; and to that extent we change what some may have said was the Arkansas holding. We now hold that such an .employee of the original purchaser is not barred by the defense of privity. In short, we find no merit to the shield of privity as urged by the appellant in the case at bar. It is fair to the Bench and Bar to say that we reserve for future cases the right to review our holdings on this entire matter of privity in all cases of breach of warranty.

## CONCLUSION

Other questions presented in the briefs are not likely to occur on retrial so we forego any further discussion.

Reversed and remanded for a new trial.

---

[9] We are conscious of the splendid opinion delivered by the learned Federal Judge in *Green* v. *Equitable Power Mfg. Co.*, 94 F. Supp. 126, in which there was a sincere attempt to follow what was thought to be the Arkansas holding then in force on privity as reflected by numerous annotations and law review articles.