ARK. CAST STONE CO. *v.* LYNN

5-3806                                    400 S. W. 2d 272

Opinion delivered March 14, 1966

*Spitzberg, Bonner, Mitchell & Hays,* By: *Allan W. Horne,* for appellant.

*H. M. Ellis, Bon McCourtney* and *Joe F. Atkins, Jr.,* for appellee.

ED. F. McFADDIN, Justice. Appellee-plaintiff, John Lynn, filed this action against appellant-defendant, Arkansas Cast Stone Company, Inc., seeking damages for personal injuries sustained when a large panel or slab of concrete fell. The case was submitted to the jury on the theory of *res ipsa loquitur,* so that the burden of disproving negligence was placed on the defendant. The jury verdict was for the plaintiff, and from the judgment on the verdict there is this appeal, with only one point urged, which is that the Trial Court should not have submitted the case to the jury on the rule of *res ipsa loquitur.*

In June 1963 Garbi and Joseph Construction Company, as the general contractor, was building the United States Post Office in Paragould. Precast concrete panels or slabs, manufactured by defendant, Arkansas Cast Stone Company, were to be used in the construction. The panel here involved was 14 feet 10 inches long, three feet nine inches wide, and three inches thick, and weighed about 2800 pounds. The defendant delivered a number of panels to the job site at Paragould by its truck; and each panel was to be separately lifted from the truck by a cable operated from a power crane and then lowered into the place where it could be attached to and become a part of the wall of the building. Because of the size and weight of the panel, and for the purpose of handling it, defendant had placed in the top of each panel two tyloops and two eyebolts, one being about 12 inches from one side, and the other a like distance from the other side. The tyloops[1] were imbedded in the concrete panel at the time of manufacture; and in each tyloop there was screwed an eyebolt. While the panel was in defendant's truck, the employees of the general contractors tightened the eyebolts, and the cable ends of the short cable were attached to each eyebolt; the short cable was attached in the center to the long cable from the power crane; the panel was thus lifted into the air from the truck; and the power crane carried the swinging panel through the air to the desired location to be fastened to the building.

On the morning in question, plaintiff John Lynn was an iron worker of Garbi and Joseph Construction Company; he had assisted in tightening one of the eyebolts into the eyeloop of the panel; had then gone to his assigned place of work; and was standing at the proper

[1]The exhibits include a drawing of a panel showing the location of the tyloop and eyebolt; and a tyloop and eyebolt, similar to the ones used in the panel here in issue, were admitted into evidence and come up to this Court as exhibits. There was evidence that in some instances the defendant had placed a small steel rod in the tyloop for added reinforcement; and on cross examination one witness stated that if the reinforcing rod did not rest on the bottom of the tyloop, such might possibly tend to weaken it.

place on a scaffold 12 or 15 feet above the ground, waiting for the panel so hoisted to be lowered to the correct position for fastening to the building. The panel fell on the scaffold, breaking it, and dashing plaintiff Lynn to the ground and causing serious, painful, and perhaps permanent injuries. One of the tyloops on the particular panel had evidently pulled out from the panel.

Lynn filed this action against the Arkansas Cast Stone Company, claiming that it had been negligent in the construction of the panel in installing the tyloop or the use of an inferior eyebolt. The complaint alleged:

"The Plaintiff further alleges that the concrete slab herein referred to is of special design and construction, both as to the materials used and the methods employed in constructing, fabricating and producing the slab; that the metal anchor built into the concrete is of special design and construction all of which is known only to the Defendant; that because of this the Plaintiff is in no position to set forth specific acts of negligence on the part of the Defendant but states that examination of the slab, the metal anchor and component parts of it after the accident indicated defects of manufacture and construction and that the Defendant should be required to set forth and explain why the anchor in the slab came loose from the concrete housing and why the concrete of which the slab was constructed did not hold together; that the very fact of the anchor's failure to hold, and the concrete's failure to remain intact at the point where the anchor was set into it is *prima facie* evidence of defective construction and negligence on the part of the Defendant."

The plaintiff tried his case on the basis of *res ipsa loquitur*: that is, that the burden of disproving negligence rested on the defendant because the panel had been constructed by the defendant, and it had installed the tyloops and furnished the eyebolts, and it knew what it had done. In other words, the mishap itself speaks: that

is the rule of *res ipsa loquitur*. Or, as we stated in one case:[2] "To paraphrase * * * * , is to say that when a product is made by a defendant for a recognized use, and the plaintiff so uses the product and without fault or negligence on his part receives injury, then the mishap itself speaks negligence and the burden is on the defendant to show itself free of negligence."

The plaintiff's witnesses testified that the panel fell because either (a) the tyloop pulled out of the panel, or (b) the concrete broke from around the tyloop; and so the plaintiff insisted—and the Trial Court held—that the burden was on the defendant, Arkansas Cast Stone Company to disprove negligence in constructing the panel and installing the tyloop. But one of the essentials of the applicability of the rule of *res ipsa loquitur* was stated and emphasized by us in *Delta Oxygen Co.* v. *Scott,* 238 Ark. 534, 383 S. W. 2d 885, where we quoted from 38 Am. Jur. 996, "Negligence" § 300:

> " 'It is essential to the application of the doctrine of *res ipsa loquitur* that it appear that the instrumentality which produced the injury complained of was at the time of the injury under the management or control of the defendant or of his agents and servants. When, however, it appears that the victim had exclusive control of the offending thing, no imputation of responsibility will attach to the defendant. It is not only necessary to show that the offending instrumentality was under the management of the defendant, but it must be shown that it proximately caused the injury, or that the injury was caused by some act incident to the control of the instrumentality. The doctrine does not apply where the agency causing the accident was not under the sole and exclusive control of the person sought to be charged with the injury. If it appears that two or more instrumentalities, only one of which was under defendant's control, contributed to or may

---

[2]*Delta Oxygen Co.* v. *Scott,* 238 Ark. 534, 383 S. W. 2d 885.

have contributed to the injury, the doctrine cannot be invoked.''

In the case at bar, Arkansas Cast Stone Company delivered the concrete panels to the job site at Paragould on its own truck. There, the employees of Garbi and Joseph, general contractors, took control of the concrete panels. One such employee was the plaintiff, John Lynn. These employees of Garbi and Joseph (a) tightened the eyebolts into the tyloops, using a wrench for that purpose; (b) attached one end of the short cable to one eyebolt and the other end of the short cable to the other eyebolt; and (c) used no spreader on the short cable to keep it from pulling sideways on the eyebolts as the panels were lifted.

When the defendant delivered the panel to the job site and the employees of Garbi and Joseph took charge of it, then the control of the defendant ceased. The screwing in of the eyebolts, the attaching of the short cable to the eyebolts, and the failure to use a spreader on the short cable, were matters which occurred to the panel after it had left the control of the defendant. It was admitted by the plaintiff that he used a wrench to screw the eyebolt down into the tyloop; and one witness for the defendant stated that such tight screwing of the eyebolt could weaken the concrete. It was also testified by a witness for the defendant that when a short cable is attached to the eyebolts, as here, then a ''spreader'' should be used; and that such spreader should be as wide as the distance between the two eyebolts, so that the pull on the eyebolts would be directly up instead of at an angle. No such spreader was here used.

Thus, there was evidence of improper handling of the panel after it left the control of the defendant; and, in view of such testimony, the plaintiff's case should not have been submitted to the jury on the theory of *res ipsa loquitur*. Such evidence as to improper handling of the panel after it left the control of the defendant made inapplicable the rule which put the burden on the defend-

ant to prove itself free of negligence. Such was the holding of this Court in *Delta Oxygen Co.* v. *Scott, supra*; and that holding followed many previous cases, some of which are: *Pekin* v. *Burkhardt,* 192 Ark. 1025, 96 S. W. 2d 776; *Kroger* v. *Melton,* 193 Ark. 494, 102 S. W. 2d 859; *Okla. Gas & Elect. Co.* v. *Frisbie,* 195 Ark. 210, 111 S. W. 2d 550; *Saunders* v. *Lambert,* 208 Ark. 990, 188 S. W. 2d 633; *Williams* v. *Lauderdale,* 209 Ark. 418, 191 S. W. 2d 455; and *Ark. P. & L. Co.* v. *Butterworth,* 222 Ark. 67, 258 S. W. 2d 36.[3] In short, where substantial evidence is offered by defendant—as here—to show possible harmful effects to the article after it left the control of the defendant, then the plaintiff cannot rely on the rule of *res ipsa loquitur,* but must go further and offer evidence of the defendant's negligence.[4]

Thus, in the case at bar, the Court was in error in submitting the case to the jury on the theory of *res ipsa loquitur* because there was substantial evidence of possible harmful effects to the concrete panel after it left the control of the defendant. But we hold that the cause

[3]An interesting and informative article is that contained in Ark. Law School Bulletin, Vol. 8, p. 43 (May 15, 1940), entitled, "*Res Ipsa Loquitur* in Arkansas," written by Robert A. Leflar and Joe E. Covington. Instruction No. 610 in Arkansas Model Jury Instructions concerns *res ipsa loquitur.*

[4]In the bottled drink cases, such as *Coca-Cola* v. *Hicks,* 215 Ark. 803, 223 S. W. 2d 762, and *Coca-Cola* v. *Mattice,* 219 Ark. 428, 243 S. W. 2d 15, we held that where due care was shown in the handling of bottled drinks until opened, then were was a practical continuation of defendant's exclusive control over the contents of the bottle up to the time of the injury. Justice Leflar, who, along with Dean Covington, wrote the article in the Arkansas Law School Bulletin (*supra*), also wrote the Opinion of this Court in *Coca-Cola* v. *Hicks* (*supra*); and in that Opinion there is this language: "The scope of this permissible inference must be carefully limited to exclude cases where the circumstances of the injury do not tend substantially to prove that negligence in the defendant, and in nobody else, caused the plaintiff's injury. To make certain that the injury has not been caused by somebody else, through some intervening negligence, it is ordinarily required that the instrumentality causing injury has been in defendant's exclusive possession and control up to the time of the plaintiff's injury. That requirement appears to have been satisfied when the plaintiff shows, as in the

should be remanded for a new trial at which the plaintiff may offer evidence of defendant's negligence.

Reversed and remanded.

instant case, that there was no opportunity for the content or character of the charged bottle to have been changed from the time it left defendant's hands until it exploded."